PERKINS COIE

505 Howard Street
Suite 1000
San Francisco, CA 94105-3204

+1.415.344.7000
+1.415.344.7050
PerkinsCoie.com

March 4, 2020

Heather M. Sager
HSager@perkinscoie.com
D. +1.415.344.7115
F. +1.415.344.7315

**VIA ECF**

Judge Roslynn R. Mauskopf
U.S.D.C., Eastern District of New York
225 Cadman Plaza East
Courtroom 6A (South Wing)
Brooklyn, New York 11201

**Re: *Ali v. Charter Communications Holding Company, LLC, et al.***
**Case No. 1:19-cv-07268-EK-RER**

Dear Judge Mauskopf:

We represent Defendant Amerit Fleet Solutions, Inc. ("AFS") in the above-referenced matter. Pursuant to Rule III.A.2 of this Court's Individual Rules, AFS respectfully requests a pre-motion conference for its anticipated Motion to Compel Arbitration and Dismiss Plaintiff's lawsuit pursuant to Section 4 of the Federal Arbitration Act and Federal Rule of Civil Procedure 12(b)(1) (the "Motion"). No answer has been filed by any party defendant in this case. In accordance with Rule III.A.3, AFS requests an extension of time for AFS to answer or otherwise respond to the Complaint until ten days after either the disposition of this request, or ten days after the disposition of any Motion permitted pursuant to this request. If the Motion is successful, no answer by AFS will be necessary. AFS' response to the Complaint is due March 5, 2020, pursuant to stipulation.

## I. Factual and Procedural Background.

AFS provides fleet maintenance and repair services to clients nationwide. In August 2017, AFS and Charter Communications Operating, LLC ("Charter") entered into a Master Services Agreement whereby AFS provided services to Charter pursuant to separately executed Statements of Work. On or about November 5, 2018, AFS and Charter entered into one such Statement of Work ("SOW"); Charter contracted with AFS for New York City Area Garage Services (the "Project"). AFS performed fleet maintenance work for the Project at locations in New York, including the College Point Location, which was a Charter garage.

On or about October 16, 2018, AFS offered Plaintiff a position as an automotive technician. In this role, Plaintiff was responsible for timely repairs and maintenance of fleet vehicles. AFS' offer to Plaintiff was contingent upon his acceptance of a Mutual Agreement to Arbitrate Claims (the "Agreement" or "Arbitration Agreement"). Plaintiff electronically signed the Agreement on October 16, 2018. The Agreement provided in pertinent part:

> In consideration for employment or continued employment at Amerit Fleet Solutions (the "Company"), the Company and Employee hereby mutually agree that any claims arising out of or relating to Employee's employment at the Company or the termination of that employment ("Claims") shall be resolved through binding arbitration. . . . This arbitration Agreement includes, but is not limited to, claims under . . . the Fair Labor Standards Act, and all comparable laws.

Plaintiff began working for AFS on or about November 5, 2018. He worked at College Point servicing Charter. He did not provide services for any other AFS customer. Following negative feedback from Charter, AFS terminated Plaintiff's employment on or about October 28, 2019.

On December 30, 2019, Plaintiff filed the instant lawsuit against AFS and Charter Communications Holding Company, LLC. The Complaint alleges claims under the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL") for, among other things, allegedly unpaid wages and overtime and failure to provide wage statements. On February 14 and February 24, counsel for AFS e-mailed Plaintiff's counsel regarding the Arbitration Agreement to determine Plaintiff's position regarding arbitration. As of this filing, Plaintiff's counsel has not responded. Counsel for AFS also contacted Charter's counsel regarding the Arbitration Agreement. Charter's counsel has not expressed an opinion regarding arbitration.

## II. Plaintiff's Complaint Should Be Compelled To Arbitration.

The Supreme Court has "repeatedly described the [Federal Arbitration Act (the "FAA")] as embod[ying] [a] national policy favoring arbitration . . . and a liberal federal policy favoring arbitration agreements". *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011) (internal quotations omitted). Evidencing this liberal policy, the FAA provides that agreements to arbitrate "shall be valid, irrevocable, and enforceable, save upon grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

In reviewing a motion to compel arbitration, courts in the Second Circuit evaluate "(1) whether the parties agreed to arbitrate; (2) whether the dispute falls within the scope of the agreement to arbitrate; (3) if federal statutory claims are asserted, whether Congress intended the statutory claims to be nonarbitrable; and (4) whether the Court should stay the balance of the proceeding pending arbitration, if not all claims are arbitrable." *Goldberg v. Sovereign Bancorp, Inc.*, 2011 WL 13261837, at *2 (S.D.N.Y Aug. 19, 2011). Here, each of these factors weigh in favor of compelling arbitration.

First, in connection with Plaintiff's offer of employment, AFS provided him a stand-alone Arbitration Agreement. By electronically signing the Agreement, Plaintiff acknowledged that he carefully read and understood its terms. Thereafter, Plaintiff commenced work for AFS. He will be unable to present any evidence that he did not sign the Agreement or that it is invalid.

Second, Plaintiff's wage and hour claims fall directly within the scope of the Arbitration Agreement. The Agreement covers claims "arising out of or relating to Employee's employment at the Company," including claims arising under the "Fair Labor Standards Act, and all comparable laws." Thus, Plaintiff's claims fall within the scope of the Arbitration Agreement.

Third, Plaintiff's FLSA and NYLL claims are arbitrable. "It is well-established that the legislative histories of FLSA and the NYLL do not show a legislative intent to preclude arbitration of wage claims." *Goldberg*, 2011 WL 13261837, at *4; *see also Sinnett v. Friendly Ice Cream Corp.*, 319 F. Supp. 2d 439, 445 (S.D.N.Y. Mar. 29, 2004).

Finally, because all claims should be submitted to arbitration, no claims should be stayed. For these reasons, AFS' motion to compel arbitration should be granted.

## III. <u>The Complaint Should Be Dismissed As To AFS.</u>

"A valid and compulsory arbitration provision covering all claims eliminates subject matter jurisdiction and bars a plaintiff from pursuing suit in a nonarbitral forum." *Wenchun Zheng, Ph.D v. General Electric Company*, 2016 WL 321092, at *4 (N.D.N.Y June 6, 2016); *see Dogan v. KeyBank, N.A.*, 2018 WL 4927524 (N.D.N.Y. Oct. 10, 2018) (granting defendant's motion to compel arbitration and motion to dismiss); *Goldberg*, 2011 WL 13261837 (concluding the court lacked jurisdiction and granting motion to dismiss). AFS anticipates moving to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction. Because all the claims in this case are subject to arbitration, the case should be dismissed as to AFS. *Sinnett*, 319 F. Supp. 2d at 445 9 ("[B]ecause all of [plaintiff's] claims are subject to resolution through arbitration, . . . this Court lacks jurisdiction to adjudicate [plaintiff's] claims and his complaint is dismissed.").

Based on the foregoing, AFS respectfully requests a pre-motion conference to address its Motion in the most efficient manner. Thank you for your consideration of this request.

Very truly yours,

Heather M. Sager

cc: All counsel of record (via ECF)